**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

_____
                                                      )
ALI SALEH KAHLAH AL-MARRI,                             )
                                                      )
                          Plaintiff,                  )
                                                      )
v.                                                     )          Civil Action No.
                                                      )          2:05-cv-02259-HFF-RSC
DONALD RUMSFELD,                                       )
Secretary of Defense of the United States,            )
COMMANDER C.T. HANFT,                                  )
U.S.N. Commander, Consolidated Naval Brig,            )
                                                      )
                          Defendants.                 )
_____)


## MOTION TO DISMISS THE COMPLAINT


Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), defendants Donald H. Rumsfeld, Secretary of Defense of the United States, and Commander C.T. Hanft, Commander of the Consolidated Naval Brig, move to dismiss this action for lack of subject matter jurisdiction because each of plaintiff's claims is barred by the doctrine of sovereign immunity and/or otherwise fails to state a claim upon which relief can be granted. A thorough memorandum in support accompanies this motion.

WHEREFORE, defendants Donald H. Rumsfeld, Secretary of Defense of the United States, and Commander C.T. Hanft, Commander of the Consolidated Naval Brig, respectfully request that the Court dismiss this action with prejudice.

Respectfully submitted,

JONATHAN S. GASSER
UNITED STATES ATTORNEY


s/ Kevin F. McDonald   (#5934)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
(803) 929-3079


s/David B. Salmons
Assistant to the Solicitor General

s/Vijay Shanker
Attorney
United States Dept. of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
202-514-2217

October 27, 2005

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

_____
                                                            )
ALI SALEH KAHLAH AL-MARRI,                )
                                                            )
                        Plaintiff,                     )
                                                            )
v.                                                         )          Civil Action No.
                                                            )          2:05-cv-02259-HFF-RSC
DONALD RUMSFELD,                              )
Secretary of Defense of the United States,    )
COMMANDER C.T. HANFT,                      )
U.S.N. Commander, Consolidated Naval Brig,  )
                                                            )
                        Defendants.                  )
_____)

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE COMPLAINT**

**INTRODUCTION**

Plaintiff is an alien detained by the Department of Defense at the Consolidated Naval Brig ("Brig") in Charleston, South Carolina, pursuant to the President's determination that he is an enemy combatant. On August 8, 2005, plaintiff filed a Complaint alleging that he has been subjected to "unlawful and unconstitutional conditions of confinement" while detained at the Brig. Pursuant to Federal Rules of Civil Procedure 12(b), defendants Donald H. Rumsfeld, Secretary of Defense of the United States, and Commander C.T. Hanft, Commander of the Brig, move to dismiss this action for lack of jurisdiction because each of plaintiff's claims is barred by the doctrine of sovereign immunity and/or otherwise fails to state a claim upon which relief can be granted.

Plaintiff's Complaint contains an assortment of related grievances concerning his conditions of detention. While defendants take plaintiff's allegations as true for purposes of this motion, they categorically deny that plaintiff has been subjected to inhumane or degrading treatment. To be clear, plaintiff is housed in a cell approximately 80 square feet in size, with a five-square-foot window,

and is met daily by members of the staff and permitted visits with his attorneys, representatives of the International Committee of the Red Cross, social workers, and medical personnel.  Plaintiff enjoys time outside of his cell for showers, recreation, medical visits, and haircuts.  He currently receives two hours of continuous outdoor (or indoor during inclement weather) recreation up to seven times  a week.  Plaintiff has a Quran, a dictionary, and a substantial amount of legal material. He also now has access to selected titles, including Islamic texts, from the Brig library; television; and a compact disc player for listening to Quranic readings.  Plaintiff's observances and practice of Islam have been minimally restricted due to security precautions.  He can, and does, practice the requirements of his religion without interference or restriction from Brig staff.  In fact, the Brig has, among other things, worked with plaintiff to avoid conflicts with his prayer schedule; informed plaintiff of the appropriate times to pray by using an Islamic time sheet; provided plaintiff with an Islamic head covering (Kufi); ordered additional Islamic texts for the Brig library; provided regular visits by a barber to ensure that plaintiff's religious facial hair requirements are maintained; and trained the Special Housing Unit staff on the proper handling and treatment of the Quran.

Plaintiff has been provided the same style bed found in any high security facility in the United States, which is a metal frame with a metal mesh bottom, and he has two mattresses.  He has a lumbar support cushion approved by a Brig physician, which he may utilize with a security chair that was specifically built and installed for him at the physician's recommendation to alleviate back pain.  His cell currently contains three blankets, a security-style wrap-around mat, a pillow, a mirror, a sink, a toilet, toiletries, and his Quran.  Plaintiff's numerous medical complaints have all been referred to either the doctor or Independent Duty Corpsman.  Plaintiff's cell temperature is maintained at a comfortable and safe level; indeed, the Brig staff has increased the temperature of

4

his housing area in order to respond to his desire for a warmer room.  Furthermore, sweatshirts and additional clothing are available upon request and have never been denied to plaintiff.  No fan has ever been used to punish, harass, or torment plaintiff, and the Brig's use of fans has absolutely no connection to plaintiff's compliance with Brig rules.  Indeed, at the request of the Brig Commanding Officer, a noise abatement study was conducted by an industrial hygienist, and decibel levels within plaintiff's cell were found to be well within required safe standards.  The water flow to plaintiff's sink and toilet has been secured in the past when he has utilized those sources to flood his cell or to assault the Brig staff by throwing water and/or his feces or urine.  When the water to his sink and toilet has been cut, plaintiff has been provided with water as needed, including to flush his toilet.

In short, plaintiff has never been subjected to any inhumane, degrading, or dangerous conditions while confined at the Brig.

Taking plaintiff's allegations as true, however, for purposes of this Motion, the Complaint must be dismissed because this Court lacks jurisdiction over plaintiff's claims.  Plaintiff asserts no basis for abrogating the federal government's sovereign immunity from suit, and none exists.  To the extent 5 U.S.C. § 702 might apply to a conventional prisoner's complaint and request for injunctive relief, its exception for military functions forecloses judicial review in the extraordinary circumstances here.  The United States is engaged in active military hostilities and plaintiff has been declared an enemy combatant.  The military's decisions regarding his detention are thus not subject to the Administrative Procedures Act ("APA") and its limited waiver of sovereign immunity.  Similarly, plaintiff, as an enemy combatant detained by the Executive Branch in wartime, has no

5

recourse to RFRA.[1]

**ARGUMENT**

I.   **PLAINTIFF'S CLAIMS MUST BE DISMISSED FOR LACK OF JURISDICTION BECAUSE THE UNITED STATES IS IMMUNE TO SUIT**

   A.   **Standard of Review**

   In considering a motion to dismiss, this Court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff.  Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). Plaintiff bears the burden of showing that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to his particular claims.  Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995).  If the plaintiff fails to meet this burden, then the claims must be dismissed.  Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001).  See Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005); see also Hawes v. United States, 409 F.3d 213, 216 (4th Cir. 2005) ("[T]he plaintiff bears the burden of persuasion if subject matter jurisdiction is challenged under Rule 12(b)(1) . . . .") (internal quotation marks omitted).

   Any waivers of sovereign immunity must be "unequivocally expressed" and are strictly construed in the Government's favor.  United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992); see United States v. Dalm, 494 U.S. 596, 608 (1990) (sovereign immunity is waived by clear and

---

   [1]   This motion sets forth the threshold bases for the dismissal of plaintiff's complaint, primarily the lack of any applicable waiver of sovereign immunity for each of plaintiff's claims.  In the event that the Court concludes that plaintiff's action may nonetheless proceed, defendants will address in detail the additional bases for dismissal of plaintiff's respective claims discussed at pages 14-18, infra.  Cf. Hamdi v. Rumsfeld, 124 S. Ct. 2633, 2652 (2004) (plurality) (noting that litigation involving enemy combatants should be "both prudent and incremental" to limit intrusion into the Executive's unique interests in detaining enemy combatants during wartime).

unequivocal statutory language). Exceptions to immunity waivers receive a generous construction, with ambiguities resolved against those seeking recovery from the government. See Williams, 50 F.3d at 305 (citing United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 807-811 (1984)).

### B.     Argument

Although this action is nominally against federal officers, it is in fact against the United States. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (citation omitted); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 687-688 (1949) (observing that in determining whether suit against agent is in reality suit against sovereign, "the crucial question is whether the relief sought in a suit nominally addressed to the officer is relief against the sovereign"); accord Food Town Stores, Inc. v. EEOC, 708 F.2d 920, 922 (4th Cir. 1983); see also Hawaii v. Gordon, 373 U.S. 57, 58 (1963). "The doctrine of sovereign immunity therefore applies" and plaintiff "may proceed against the United States only if the United States has consented to the suit." Food Town Stores, 708 F.2d at 922.[2]

Sovereign immunity is a jurisdictional defense, FDIC v. Meyer, 510 U.S. 471, 475 (1994),

_____

[2] Plaintiff cannot rely on the exception to sovereign immunity discussed in Larson, supra, for ultra vires acts by a federal official. The ultra vires doctrine is grounded on "the officer's lack of delegated power." Larson, 337 U.S. at 690. "A claim of error in the exercise of that power is therefore not sufficient." Id. The mere allegation that an official acted wrongfully "does not establish that the officer, in committing that wrong, is not exercising the powers delegated to him by the sovereign. If he is exercising such powers the action is the sovereign's and a suit to enjoin it may not be brought unless the sovereign has consented." Id. at 693. Plaintiff has nowhere alleged that the defendants acted beyond their authority. See Wyoming v. United States, 279 F.3d 1214, 1230 (10th Cir. 2002) ("the question of whether a government official acted ultra vires is quite different from the question of whether that same official acted erroneously or incorrectly as a matter of law").

and once a federal court determines that it lacks jurisdiction, it is powerless to continue, <u>Steel Co.</u> v. <u>Citizens for a Better Env't</u>, 523 U.S. 83, 94-95 (1998). See <u>United States</u> v. <u>Testan</u>, 424 U.S. 392, 399 (1976) ("It long has been established, of course, that the United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'"). When sovereign immunity is an issue, the plaintiff must first demonstrate that there has been a waiver of sovereign immunity before the court will determine whether the "source of substantive law upon which the claimant relies provides an avenue for relief." <u>Meyer</u>, 510 U.S. at 484; see also <u>Welch</u>, 409 F.3d at 651.

Plaintiff alleges jurisdiction based on 28 U.S.C. § 1331, 28 U.S.C. § 1350, 5 U.S.C. § 702, 28 U.S.C. §§ 2201 and 2202, and Article III of the Constitution. Complaint ("Cmplt.") ¶ 7. None of these provisions, however, waives the federal government's immunity from suit. The complaint should therefore be dismissed for lack of jurisdiction. Plaintiff has failed to meet his burden of establishing that the requisite waiver of sovereign immunity exists.

Section 1331, the federal-question statute, "is not a general waiver of sovereign immunity." <u>Randall</u> v. <u>United States</u>, 95 F.3d 339, 345 (4th Cir. 1996). "It merely establishes a subject matter that is within the competence of federal courts to entertain." <u>Id</u>. Likewise, Section 1350, the Alien Tort Statute, does not constitute a waiver of sovereign immunity. See <u>Goldstar (Panama) S.A.</u> v. <u>United States</u>, 967 F.2d 965, 968-969 (4th Cir. 1992) ("any party asserting jurisdiction under the Alien Tort Statute must establish, independent of that statute, that the United States has consented to suit"); see also <u>Department of the Army</u> v. <u>Blue Fox, Inc.</u>, 525 U.S. 255, 260 (1999). Nor do the declaratory judgment statutes, 28 U.S.C. §§ 2201 and 2202, waive sovereign immunity. See <u>Goldstein</u> v. <u>Moatz</u>, 364 F.3d 205, 219 (4th Cir. 2004) ("If a declaratory judgment proceeding

8

actually constitutes a suit against the sovereign, it is barred absent a waiver of sovereign immunity.").  Plaintiff must therefore look beyond these general jurisdictional provisions to locate a waiver of the government's sovereign immunity from suit.

Furthermore, plaintiff's references to Article III and the First, Fourth, Fifth, and Eighth Amendments to the United States Constitution do not satisfy his obligation to identify an applicable waiver of sovereign immunity.  It is well settled that the United States has not generally consented to suits brought directly under constitutional provisions.  See Reinbold v. Evers, 187 F.3d 348, 355 n.7 (4th Cir. 1999); Radin v. United States, 699 F.2d 681, 684 (4th Cir. 1983) (holding that United States is immune to suits alleging Fifth Amendment deprivations by federal agencies); see also Gonsalves v. IRS, 975 F.2d 13, 15 (1st Cir. 1992) ("There is no implied right of action, analogous to that found in [Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)], for claims against the government.").

Plaintiff fares no better by referring to the Geneva Conventions, international treaties, or other purported sources of international law.  Absent extraordinary circumstances not present here, such treaties and the like do not create privately enforceable rights.  Goldstar (Panama) S.A., 967 F.2d at 968; see Head Money Cases, 112 U.S. 580, 598-599 (1884); Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 442 (1989) (holding that Geneva conventions only set forth substantive rules of conduct and do not create private rights of action).  Thus, the Supreme Court in Johnson v. Eisentrager, 339 U.S. 763, 789 n.14 (1950), concluded that the 1929 Geneva Convention was not judicially enforceable, because the Convention makes clear that "responsibility for observance and enforcement of" its provisions "is upon political and military authorities."  The D.C. Circuit recently held that "[t]his aspect of Eisentrager is still good law and demands our

9

adherence." <u>Hamdan</u> v. <u>Rumsfeld</u>, 415 F.3d 33, 39 (D.C. Cir. 2005), cert. petition pending, No. 05-184 (filed Aug. 8, 2005).  It further held that while "[t]here are differences" between the 1929 Convention and the 1949 Geneva Convention, upon which Al-Marri relies, see Compl. ¶¶ 134, 156, 159, "none of [those differences] renders <u>Eisentrager</u>'s conclusion about the 1929 Convention inapplicable to the 1949 Convention." 415 F.3d at 39.  Accordingly, neither the Geneva Convention nor any other treaty or source of international law relied upon by Al-Marri confers upon Al-Marri a right to enforce its provisions in court." <u>Id.</u> at 40.

Plaintiff's last asserted basis for jurisdiction, Section 702 of the APA, also fails to waive sovereign immunity in this context.  Section 702 states that

> [a]n action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States . . . .

5 U.S.C. § 702.  "In section 702 Congress has waived the defense of sovereign immunity in . . . nonstatutory review cases in which nonmonetary relief is sought." <u>Hostetter</u> v. <u>United States</u>, 739 F.2d 983, 985 (4th Cir. 1984).

The Fourth Circuit, however, has held that Section 702's waiver of sovereign immunity is limited by other sections of the APA, such as Sections 701 and 703.  <u>Radin</u>, 699 F.2d at 687 n.13.  See also <u>Consolidated Edison Co.</u> v. <u>United States</u>, 247 F.3d 1378, 1382-1383 (Fed. Cir. 2001) (waiver of sovereign immunity under 5 U.S.C. § 702 limited by terms of § 704); <u>Beamon</u> v. <u>Brown</u>, 125 F.3d 965, 967 (6th Cir. 1997) (§ 702 suit limited by § 701 and § 704); <u>Kanemoto</u> v. <u>Reno</u>, 41 F.3d 641, 644 (Fed. Cir. 1994) (suit under 5 U.S.C. § 702 limited by terms of § 704); <u>Taylor-Callahan-Coleman Counties District Adult Probation Dep't</u> v. <u>Dole</u>, 948 F.2d 953, 956 (5th Cir. 1991) (same).  The types of claims plaintiff asserts are expressly precluded by several different

provisions of the APA, any one of which provides a sufficient basis for dismissing the Complaint.

First, the APA expressly exempts from its waiver of immunity suits challenging "military authority exercised in the field in time of war or in occupied territory." 5 U.S.C. § 701(b)(1)(G); see 5 U.S.C. § 701(b)(1)(F). In Doe v. Sullivan, 938 F.2d 1370, 1380 (D.C. Cir. 1991), the D.C. Circuit specifically recognized that Section 701(b)(1)(G) insulates from judicial review "dispute[s] over military strategy," and applies not only to the exercise of military authority "in combat zones," but also to the exercise of such authority "in the aftermath of . . . battle." Section 701(b)(1)(g) thus avoids "judicial interference" (938 F.2d at 1380) with military operations. See also Rasul v. Bush, 215 F. Supp. 2d 64 n.11 (D.D.C. 2002) ("Assuming that Section 702 of the Administrative Procedure Act provides a waiver, . . . the actions of the government in this case [involving challenges to the detention of aliens held outside the sovereign territory of the United States] would be exempt by 5 U.S.C. § 701(b)(1)(G)."), aff'd, 321 F.3d 1134 (D.C. Cir. 2003), rev'd on other grounds, 542 U.S. 466 (2004).

This litigation falls squarely within the APA's "military authority" exception and, thus, is precluded. There is no question that the United States is currently engaged in military hostilities. The Executive's conduct of the hostilities is backed by a Joint Resolution of Congress. Auth. for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224. Moreover, plaintiff's detention is directly related to, and intended to advance, the ongoing war effort -- in particular, by denying enemy forces the continued services of those detained and by enabling military authorities to gather potentially critical intelligence that may both aid the military in the field and protect the Nation from future attacks. See Hamdi, 124 S. Ct. at 2640 (plurality) (the "capture and detention of lawful combatants and the capture, detention, and trial of unlawful combatants, by 'universal agreement and practice'

11

are 'important incident[s] of war'") (citation omitted); accord <u>id.</u> at 2679 (Thomas, J., dissenting);

<u>Ex Parte Quirin</u>, 317 U.S. 1, 27-28 (1942) ("From the very beginning of its history this Court has

recognized and applied the law of war as including that part of the law of nations which prescribes,

for the conduct of war, the status, rights and duties of enemy nations as well as of enemy

individuals."); <u>id.</u> at 28-29 ("An important incident to the conduct of war is the adoption of measures

by the military command not only to repel and defeat the enemy, but to seize and subject to

disciplinary measures those enemies who in their attempt to thwart or impede our military effort

have violated the law of war.").  What is more, because Section 701(b)(1)(G) has been held to bar

"judicial interference with the relationship between soldiers and their military superiors," <u>Doe</u>, 938

F.2d at 1380, allowing this action to proceed under the APA would lead to a "bizarre anomaly" --

United States soldiers would be precluded form bringing suit under the APA with regard to military

events, while aliens could sue their United States military captors while hostilities remained under

way.  <u>Rasul</u>, 215 F. Supp. 2d at 64 n.11.

Second, the APA does not sanction challenges to executive action that "is committed to

agency discretion by law."  5 U.S.C. § 701(a)(2).  Section 701(a)(2) covers matters that have been

"traditionally left to agency discretion."  <u>Lincoln</u> v. <u>Vigil</u>, 508 U.S. 182, 191 (1993) (emphasis

added).  And, as history teaches, military operations during periods of ongoing hostilities have

traditionally been left to the discretion of the Executive.  See <u>Department of Navy</u> v. <u>Egan</u>, 484 U.S.

518, 530 (1988) (noting the reluctance of the courts "to intrude upon the authority of the Executive

in military and national security affairs"); <u>Eisentrager</u>, 339 U.S. at 763; <u>Hirota</u> v. <u>MacArthur</u>, 338

U.S. 197, 215 (1948) (Douglas, J., concurring).  While the courts have played a role in considering

challenges to the legality of the detention itself, see, <u>e.g.</u>, <u>Hamdi</u>, <u>supra</u>; <u>Quirin</u>, <u>supra</u>, the details

of the conditions of detention for military detention has always been a matter left to the discretion of military and Executive Branch officials, subject only to international obligations, which are not judicially enforceable.  See Eisentrager, 339 U.S. at 789 n.14; Hamdan, 415 F.3d at 39.[3]  The fact that none of the hundreds of thousands of detainees held in the United States during World War II brought a conditions-of-detention claim underscores that this matter is committed to the discretion of the military officials.

At the same time, courts have recognized that the APA does not cover any action of the President, much less action stemming from the exercise of his Commander-in-Chief power. Armstrong v. Bush, 924 F.2d 282, 289 (D.C. Cir. 1991); see Franklin v. Massachusetts, 505 U.S. 788, 800 (1992); cf. Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 111-112 (1948) (Jackson, J.).  Section 701(a)(2) thus independently bars any APA challenge to the military actions challenged here.

Third, Section 702 of the APA itself precludes review in this case.  Section 702(1) makes clear that the APA does not excuse the courts from their duty "to dismiss any action or deny relief on any other appropriate legal or equitable ground."  5 U.S.C. § 702(1).  That provision was enacted as part of the 1976 amendments implementing the recommendations of the Administrative Conference of the United States, which were designed, inter alia, to ensure that the waiver of sovereign immunity in the APA did not allow courts to "decide issues about foreign affairs, military policy, and other subjects inappropriate for judicial action."  See Sovereign Immunity: Hearing on

_____

[3]  This reliance on international treaty law makes sense because it provides a basis for the Executive Branch to negotiate with foreign governments to obtain reciprocal guarantees of fair treatment for U.S. soldiers.  But reciprocal protections have never included access to the domestic courts of the detaining power.

13

S. 3568 Before the Subcomm. on the Administrative Practice and Procedure of the Senate Comm. on the Judiciary, 91st Cong., 2d Sess. 135 (1970) (report of the Administrative Conference Committee on Judicial Review).

The decision of the D.C. Circuit in Sanchez-Espinoza v. Reagan, 770 F.2d 202 (D.C. Cir. 1985), makes clear that Section 702(1) precludes the sort of action here. As then-Judge Scalia explained:

> The APA specifically provides that its judicial review provision does not affect "the power or duty of the court to dismiss any action or deny relief on any . . . appropriate legal or equitable ground." 5 U.S.C. § 702. At least where the authority for our interjection into so sensitive a foreign affairs matter as this are statutes no more specifically addressed to such concerns than the Alien Tort Statute and the APA, we think it would be an abuse of our discretion to provide discretionary relief [i.e., a request for declaratory or injunctive relief].

Id. at 208 (emphasis added). Sanchez-Espinoza involved a challenge to the actions of federal officials with respect to hostilities in Nicaragua, which the court of appeals declined to resolve on the basis of the political question doctrine. Id. at 206-207. The sorts of military operations and activities at issue in this case -- the capture and detention of enemy combatants in connection with active hostilities involving the United States -- implicate just as "sensitive a foreign affairs matter" as, if not a more sensitive matter than, the activities at issue in Sanchez-Espinoza. See Quirin, 317 U.S. at 27-29.

In several complementary ways, the APA thus effects a broad exclusion for military functions such as those involved in this case. See Richey v. United States, 322 F.3d 1317, 1327 n.3 (Fed. Cir. 2003) ("The military is largely exempt from the APA.") (citing 5 U.S.C. §§ 554(a)(4), 701(b)(1) (2000)); Zhang v. Slattery, 55 F.3d 732, 744 (2d Cir. 1995). The APA's limited waiver of sovereign immunity accordingly does not apply to plaintiff's claims challenging the conditions of his wartime detention by the military.

14

Finally, this Court also lacks jurisdiction over plaintiff's claim under RFRA. RFRA does authorize certain suits against the federal government, but it by no means authorizes the extraordinary action attempted by the plaintiff here. Even assuming RFRA contains a waiver of sovereign immunity for claims seeking non-monetary relief,[4] there is no basis for concluding that Congress intended to subject the military to claims under RFRA by an enemy combatant detained by the Executive Branch as part of an ongoing war effort.

As discussed above, military operations during time of war have traditionally been left to the discretion of the Executive. See American Ins. Ass'n v. Garamendi, 539 U.S. 396, 414 (2003) ("While Congress holds express authority to regulate public and private dealings with other nations in its war and foreign commerce powers, in foreign affairs the President has a degree of independent authority to act."). Courts do not presume that Congress wishes to curtail the discretion of the Executive Branch with respect to military functions, unless Congress does so in clear and unequivocal terms. See Egan, 484 U.S. at 530 ("unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs"); Reinbold, 187 F.3d at 357 ("this circuit has taken the view that 'unless Congress specifically has provided otherwise, the courts will not intrude upon the [Executive Branch's] authority to grant or deny access to national security information'") (quoting Guillot v. Garrett, 970 F.2d 1320, 1324 (4th Cir. 1992)) (emphasis in Guillot); id. at 357-358 ("under our circuit precedent, in the absence of a specific mandate from Congress providing otherwise, Egan deprives the federal courts of subject-matter jurisdiction to review an agency's security clearance

---

[4] But cf. Meyer v. Federal Bureau of Prisons, 929 F. Supp. 10, 14 (D.D.C. 1996) ("the RFRA provides no waiver of governmental immunity, nor does its legislative history suggest such a result"); Jama v. INS, 343 F. Supp. 2d 338, 373 (D.N.J. 2004).

decision").[5]  Thus, as the Supreme Court has put it, the presumption in favor of judicial review "runs aground when it encounters concerns of national security . . . committed by law to the appropriate agency of the Executive Branch."  Egan, 484 U.S. at 527.

In passing RFRA, Congress evinced no intent -- let alone a specific and clear intent -- to encroach on the traditional powers of the Commander in Chief and the armed forces to conduct war, especially a power so sensitive as that to determine the rights and duties towards detained enemies. See Quirin, 317 U.S. at 27-28.  In the absence of such an expression of intent, this Court should not extend RFRA's judicial review provision to an alien enemy being detained by the military and should deny jurisdiction on that basis.[6]

Having thus failed to allege any valid basis for jurisdiction, plaintiff's Complaint should be dismissed with prejudice.

---

[5] See also Becerra v. Dalton, 94 F.3d 145, 148-149 (4th Cir. 1996); United States v. Mandel, 914 F.2d 1215, 1220 n.10 (9th Cir. 1990) ("Courts therefore should not intrude upon the authority of the executive in military and national security affairs, unless Congress has specifically expressed a contrary intention."); Jamil v. Secretary, Dep't. of Defense, 910 F.2d 1203, 1207-1208 (4th Cir. 1990).

[6] As discussed, the military has gone to great lengths to attempt to accommodate plaintiff's religious practices.  That is consistent with the military's general policy of ensuring that detained enemy combatants are treated fairly and humanely.  However, there is no basis for concluding that Congress intended to arm detained enemy combatants with the right to bring suit against their captors under RFRA challenging the conditions of their wartime detention.

## II.   IN THE ALTERNATIVE, PLAINTIFF'S CLAIMS MUST BE DISMISSED BECAUSE HE HAS FAILED TO ALLEGE FACTS SUPPORTING THOSE CLAIMS

Although defendants submit that the most appropriate way of resolving this case is to dismiss the complaint on the threshold ground that sovereign immunity bars each of plaintiff's claims, those claims are also subject to dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### A.   Standard of Review

A motion to dismiss for failure to state a claim should be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of a claim that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations set forth in the complaint must be accepted as true, Zinermon v. Burch, 494 U.S. 113, 118 (1990), and the court must view those allegations in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). See Chao v. Rivendell Woods, Inc., 415 F.3d 342, 346 (4th Cir. 2005).

### B.   Argument

1. Even if this Court were to conclude that it has jurisdiction over plaintiff's RFRA claim, for example, it should still dismiss that claim because, at a minimum, plaintiff has failed to allege facts that could establish that the government "substantially burdened" the practice of his religion. Plaintiffs asserting RFRA claims must show that "the claims they have stated in their complaint placed a 'substantial burden' on their exercise of religion." Woods v. Evatt, 876 F. Supp. 756, 762 (D.S.C.), aff'd, 68 F.3d 463 (4th Cir. 1995); see 42 U.S.C. § 2000bb-1. Whether conduct substantially burdens a person's religious practice is the "threshold inquiry under RFRA." American Life League, Inc. v. Reno, 47 F.3d 642, 654 (4th Cir. 1995). "If a statute [or conduct] does not substantially burden a religious practice, then the statute [or conduct] does not implicate RFRA."

17

Id.

A "substantial burden" exists "'where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs. . . .'" Woods, 876 F. Supp. at 762 (quoting Thomas v. Review Bd., Indiana Employment Security Div., 450 U.S. 707, 717-718 (1981)). The burden placed on the religious exercise "'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief which is central to religious doctrine.'" Id. (quoting Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir. 1987), aff'd sub nom. Hernandez v. Commissioner, 490 U.S. 680 (1989)). "The burden must be more than mere inconvenience or a less desirable situation." Id. "Stated differently, the practice places a substantial burden on the religious exercises of inmates if it coerces them into violating their religious beliefs, or if it compels them to refrain, by threat of sanctions, to refrain from religiously motivated conduct." Id. (internal quotation marks omitted).

Under these standards, plaintiff's RFRA claim fails as a matter of law. Plaintiff's allegations, if true, at most would establish that his religious practice has been inconvenienced. Plaintiff alleges only that he has been denied a clock, a razor, water "in his cell," books "except for the Quran," a pen, and a compass. Cmplt. ¶¶ 76-79, 81, 87. He alleges that his copy of the Quran has been mistreated and disrespectfully handled, but he has not alleged that this occurred on more than one occasion. Cmplt. ¶ 80. Plaintiff alleges that he has been denied a prayer rug, but he acknowledges that he has been provided a blanket as a substitute. Cmplt. ¶ 82. Plaintiff also alleges that he has been denied a head-cover and the opportunity to meet with Muslim scholars or clerics or to correspond with Islamic organizations. Cmplt. ¶¶ 83-86. But he does not allege that such

denial interferes with any tenets "central to religious doctrine." Woods, 876 F. Supp. at 762. In short, plaintiff has nowhere alleged that any conduct by defendants has put "substantial pressure" on him "by threat of sanctions" to "modify his behavior and to violate his beliefs." Id. at 762. Thus, even assuming plaintiff could prove his allegations (which he cannot), they fall well short of the "substantial burden" required by RFRA.

2. Plaintiffs' other claims suffer from similar legal defects. Most fundamentally, plaintiff fails to recognize the import of this Court's holding both that the President has the legal authority to order plaintiff's detention as an enemy combatant during the ongoing hostilities with al-Qaeda, and that the distinction between citizens and aliens is dispositive with respect to the Executive's authority to continue to detain plaintiff for the duration of the current hostilities. Memorandum Opinion And Order (July 8, 2005) (reported at 378 F. Supp. 2d 673); id. at 7 (rejecting claim that "aliens in this country, at all times, have access to the same constitutional protections as citizens"); cf. Hamdi v. Rumsfeld, 124 S. Ct. 2633, 2660-2674 (2004) (Scalia, J., dissenting). Thus, his repeated references (see, e.g., Compl. ¶¶ 128, 132, 136-137, 141, 165, 167, 170, 173) to the constitutional requirements for the confinement of citizens and others detained by civil authorities for violations of domestic criminal laws is utterly misplaced.

Captured enemy combatants, and in particular alien enemy combatants, during wartime do not have broad First Amendment rights to extensive library materials or to correspondence with family members and others (although, in fact, plaintiff has been granted privileges to both). Nor do they have a First Amendment right "to develop and maintain a close personal relationship with intimate family members" (Compl. ¶ 141), or a Fourth Amendment right to be free from monitoring or observation during their detention as enemy combatants (id. ¶ 165). And the Eighth

Amendment's prohibition of cruel and unusual punishment is simply not applicable to the preventative detention of enemy combatants during wartime -- a form of detention that the Supreme Court in Hamdi determined was non-punitive and was "a fundamental incident of waging war." 124 S. Ct. at 2640 (plurality).

Similarly, plaintiff has not sufficiently alleged that the government has violated any Fifth Amendment due process rights he may have by continuing to detain him as an enemy combatant. Again, as Hamdi makes clear, any right to due process plaintiff may have has been and will be more than satisfied through the Court's adjudication of his separate habeas corpus proceeding. Indeed, several of plaintiff's claims, including his assertion that his detention is unlawful because he is being held without criminal charge or formal military tribunal determination of his combatant status, as well as his complaints about his access to counsel and past interrogations, are claims that he raised in his separate habeas action. See No. 2:04-2257-26AJ, Habeas Pet. ¶¶ 37-41, 42-45, 46-51, 52-55. Moreover, given the broad discretion of the Executive in this area and the lack of historical recognition of any substantive due process rights on the part of captured alien enemy combatants, petitioner's allegations do not establish any violation of the Fifth Amendment. Cf. Herrera v. Collins, 506 U.S. 390, 407-408 (1993) (examining "[h]istorical practice" in assessing scope of "Fourteenth Amendment's guarantee of due process"); Moyer v. Peabody, 212 U.S. 78, 84 (1909) (requirement of due process "depends on circumstances" and "varies with the subject-matter and the necessities of the situation").

For these same reasons, and for the reasons explained in Part I above, plaintiff's claims under various federal statutes, regulations, and sources of international law also fail to state a claim upon which relief could be granted.

20

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Respectfully submitted.

JONATHAN S. GASSER
UNITED STATES ATTORNEY


s/Kevin F. McDonald
Kevin F. McDonald (I.D. #5934)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
(803) 929-3079

David B. Salmons
Assistant to the Solicitor General

Vijay Shanker
Attorney
United States Dept. of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
202-514-2217

October 27, 2005

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

_____

| | |
|---|---|
| ALI SALEH KAHLAH AL-MARRI, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| DONALD RUMSFELD, | ) |
| Secretary of Defense of the United States, | ) |
| COMMANDER C.T. HANFT, | ) |
| U.S.N. Commander, Consolidated Naval Brig, | ) |
| | ) |
| Defendants. | ) |
| _____) | |

Civil Action No.
2:05-cv-02259-HFF-RSC

CERTIFICATE OF SERVICE

As attorney of record, on October 27, 2005, I caused my legal assistant, Lisa Gillam, to serve one true and correct copy of the

### MOTION TO DISMISS THE COMPLAINT
### and
### MEMORANDUM IN SUPPORT OF DEFENDANTS'
### MOTION TO DISMISS THE COMPLAINT

via the court's e-noticing system, but if that means failed, then by regular mail, on the following persons(s):

Lawrence S. Lustberg
Mark A. Berman
GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE
A Professional Corporation
One Riverfront Plaza
Newark, NJ 07102-5496

Jonathan L. Hafetz
GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE
A Professional Corporation
One Pennsylvania Plaza, 37th Floor
New York, NY 10119

Andrew J. Savage, III
SAVAGE & SAVAGE, P.A.
15 Prioleau Street
Post Office Box 1002
Charleston, SC  29402

  s/ Kevin F. McDonald
Kevin F. McDonald (ID #5934)
Assistant United States Attorney

22